IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| FREDERICK FOSTER, : | |
| : | CIVIL ACTION |
| Plaintiff, : | |
| : | NO. 11-7303 |
| v. : | |
| : | |
| PITNEY BOWES INC, : | |
| UNITED STATES POSTAL SERVICE, : | |
| and JOHN DOES 1-10, : | |
| : | |
| Defendants. : | |

**<u>OPINION</u>**

**Slomsky, J.**                                                                                                      **July 23, 2012**

**I.      INTRODUCTION**

This case involves a dispute over intellectual property. On November 23, 2011, Plaintiff Frederick D. Foster, proceeding *pro se*, filed a Complaint against Defendants Pitney Bowes Corporation ("Pitney Bowes"), United States Postal Service ("USPS") and John Does 1-10 ("John Does"). (Doc. No. 1.) Plaintiff asserts five claims: (1) a violation of 39 U.S.C. § 404a of the Postal Accountability and Enhancement Act ("PAEA");[1] (2) misrepresentation and fraud; (3) conversion; (4) unjust enrichment; and (5) misappropriation of trade secrets. (Doc. No. 1-1 ¶¶ 44-66.) The Complaint seeks compensatory and punitive damages in excess of $150,000. (Id. ¶ 66.)

On March 9, 2012, Defendant USPS filed a Motion to Dismiss under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) for lack of subject matter jurisdiction and failure to state a

---

[1] In the Complaint, Plaintiff quotes from 39 U.S.C. § 404a, but incorrectly cites it as 39 U.S.C. § 403.

claim. (Doc. No. 14.) On April 30, 2012, Plaintiff filed a Response to the Motion to Dismiss. (Doc. No. 20.)[2] On July 2, 2012, the Court held a hearing on Defendant USPS's Motion.

For reasons that follow, the Court will grant Defendant USPS's Motion to Dismiss for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1).[3]

## II.     STATEMENT OF FACTS

The Court recites the facts in the light most favorable to Plaintiff. On or about May 7, 2007, Plaintiff submitted a patent application to the United States Patent and Trademark Office. (Doc. No. 1 ¶ 23.) He described his concept as the "Virtual Post Office Box/Internet Passport powered by Global Registration and Verification" ("VPOBIP"). (Id. ¶ 21.) VPOBIP was designed to verify identity on the Internet. (Id.) VPOBIP is a system where, for a fee, individuals and businesses would present identification documents to their local post office. (Id.) Once their identity was verified by USPS, they would receive a virtual Post Office Box and their email messages would contain a VPOBIP badge. (Doc. No. 1, Ex. B at 2.) The VPOBIP badge

---

[2] On May 7, 2012, Plaintiff filed supplemental exhibits in support of his response. (Doc. No. 23). Among these documents are excerpts from a USPS manual on supply practices, excerpts from a 2004 USPS statement on postal operations, and an article from the American Postal Workers Union. (Id.)
   In deciding a motion to dismiss, a court may properly consider the complaint, exhibits attached thereto, documents referenced therein, matters of public record, and undisputably authentic documents if the complainant's claims are based upon these documents. Mayer v. Belichick, 605 F.3d 223, 230 (3d Cir. 2010); Kernaghan v. BCI Communications, Inc., 802 F. Supp. 2d 590, 593 n.2 (E.D. Pa. 2011). The Court has examined these documents and will consider them to the extent that they relate to the claims alleged in the Complaint.

[3] Because the Court is dismissing Plaintiff's claims against Defendant USPS for lack of subject matter jurisdiction, the Court will not address USPS's Motion to Dismiss for failure to state a claim under Rule 12(b)(6). See McCurdy v. Esmonde, No. 02-4614, 2003 WL 223412, at *4 (E.D. Pa. Jan. 30, 2003) (quoting Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 94-95 (1998)) ("Without jurisdiction the court cannot proceed at all in any cause.").

apparently would make the user seem more trustworthy to other members of the online community.  (Id.)  The aim of the VPOBIP system was to diminish the amount of Internet fraud as more people used the software.  (Id.)

On or about May 25, 2007, Plaintiff mailed a description of VPOBIP to USPS's Senior Vice President of Strategy and Transition, Linda Kingsley ("Kingsley").  (Doc. No. 1 ¶ 23.)  Kingsley assigned the proposal for review to Linda Stewart ("Stewart"), Vice President of Strategic Planning.  (Id. ¶¶ 23-24.)  Kingsley also instructed Plaintiff to submit his concept through the USPS Innovations Initiative Database, which he did on or about June 11, 2007.  (Id. ¶ 23.)

Plaintiff had several conversations with representatives from USPS, including Stewart and the Manager of Strategic Business Initiatives, Thomas Cinelli ("Cinelli").  (Id. ¶ 24.)  Cinelli told Plaintiff that his proposal would be presented to USPS's stakeholders,[4] including Defendant Pitney Bowes.  (Id.)  The stakeholders approved a VPOBIP pilot program.  (Id. ¶ 25.)

Cinelli forecasted that the profit from the VPOBIP program would exceed $10 million.  (Id.)  Cinelli therefore informed Plaintiff that the Postal Regulatory Commission ("PRC") would also need to give its approval.  (Id.)  Plaintiff then began to communicate with the PRC and other government agencies.  (Id. ¶ 26.)

In September 2009, the PRC suggested that Plaintiff contact John Campo ("Campo"), President of Postal Relations at Pitney Bowes.  (Id. ¶ 28.)  On October 1, 2009, Plaintiff contacted Campo by phone and email.  In his email, Plaintiff described the VPOBIP system,

---

[4] USPS maintains that, as a federal agency, it does not have stakeholders.  (Doc. No. 14 at 2.)

including his notice of patent rights, and explained his intent to partner with USPS.  (Id. ¶ 29.) The Complaint does not allege any further conversations between Plaintiff and Pitney Bowes or USPS.

In March or April 2011, Pitney Bowes launched "Volly.com," an online verification system that contains features which Plaintiff argues are a direct copy of VPOBIP.  (Id. ¶ 30.) Thereafter, Plaintiff commenced the instant litigation against Defendants USPS, Pitney Bowes and John Does.

### III.  STANDARD OF REVIEW

When reviewing a motion to dismiss under Rule 12(b)(1), a court must determine whether the motion is a facial or factual challenge.  See In re Schering Plough Corp. Intron/Temodar Consumer Class Action, 678 F.3d 235, 243 (3d Cir. 2012) (citing Mortensen v. First Fed. Sav. & Loan Ass'n, 549 F.2d 884, 891 (3d Cir. 1977)).  "A facial attack challenges only the court's subject matter jurisdiction.  A factual attack allows the court to question the plaintiff's facts after the defendant files an answer."  Machon v. Pa. Dep't of Pub. Welfare, No. 11-4151, 2012 WL 592323, at *4 (E.D. Pa. Feb. 23, 2012) (citing Mortensen, 549 F.2d at 891). Here, no answer has been filed by Defendant USPS.  Therefore, the Rule 12(b)(1) motion is a facial attack on the Court's subject matter jurisdiction.

"In reviewing a facial challenge, which contests the sufficiency of the pleadings, the court must only consider the allegations of the complaint and documents referenced therein and attached thereto, in the light most favorable to the plaintiff."  In re Schering Plough Corp., 678 F.3d at 243 (citing Gould Elecs., Inc. v. United States, 220 F.3d 169, 176 (3d Cir. 2000) (internal quotations omitted)).

**IV.    DISCUSSION**

     A.    <u>Postal Accountability and Enhancement Act Claim</u>

Plaintiff argues that Defendant USPS has violated the Postal Accountability and Enhancement Act ("PAEA"), specifically 39 U.S.C. § 404a, which states in subsection (a)(3):

> [T]he Postal Service may not . . . obtain information from a person that provides (or seeks to provide) any product, and then offer any postal service that uses or is based in whole or in part on such information, without the consent of the person providing that information, unless substantially the same information is obtained (or obtainable) from an independent source or is otherwise obtained (or obtainable).

39 U.S.C. § 404a(a)(3).

Defendant argues that in order to recover for a violation of 39 U.S.C. § 404a, an individual must first satisfy the procedural requirements of 39 U.S.C. § 3662. Section 3662 states, in pertinent part:

> Any interested person . . . who believes the Postal Service is not operating in conformance with the requirements of the provisions of sections 101(d), 401(2), 403(c), *404a*, or 601 . . . may lodge a complaint with the Postal Regulatory Commission in such form and manner as the Commission may prescribe.

39 U.S.C. § 3662 (emphasis added). After receiving an adverse ruling from the Postal Regulatory Commission ("PRC"), an individual may appeal that ruling to the United States Court of Appeals for the District of Columbia. 39 U.S.C. § 3663 ("A person . . . adversely affected or aggrieved by a final order or decision of the Postal Regulatory Commission may . . . institute proceedings for review thereof by filing a petition in the United States Court of Appeals for the District of Columbia."). Because Plaintiff has not followed the procedures set forth in Sections 3662 and 3663, which ultimately vest jurisdiction over claims arising under Section 404a in the United States Court of Appeals for the District of Columbia and not this Court, Defendants assert

that this Court lacks subject matter jurisdiction over Plaintiff's claim under the PAEA.

In response to this argument, Plaintiff refers to the provision of the PAEA that grants district courts "original but not exclusive jurisdiction over all actions brought by or against the Postal Service." 39 U.S.C. § 409. Plaintiff claims that Section 409 establishes a general rule that violations of the PAEA are to be heard in any federal court. (Doc. No. 20 at 4.) To support his argument, Plaintiff notes that the language of 39 U.S.C. § 3662, cited above, is permissive and not mandatory because the use of the word "may" in Section 3662 implies that he is not required to submit a complaint to the PRC, and may instead file a claim in the first instance in federal court. (Id. at 5.)

As a rule of statutory construction, the word "'may' is permissive," whereas the word "'shall' is mandatory." LeMay v. U.S. Postal Serv., 450 F.3d 797, 799 (8th Cir. 2006) (citing Anderson v. Yungkau, 329 U.S. 482, 485 (1947); Braswell v. City of El Dorado, Ark., 187 F.3d 954, 958-59 (8th Cir. 1999)). However, Congressional intent plays a role in construing Section 3662, especially when Congress has exhibited a "fairly discernible" intent in a "particular legislative scheme" to withhold jurisdiction from the court. In this situation, the court must follow Congress' intent. Ismailov v. Reno, 263 F.3d 851, 854 (8th Cir. 2001) (quoting Block v. Cmty. Nutrition Inst., 467 U.S. 340, 349 (1984)). In order to determine whether Congress intended Section 3662 to grant the PRC exclusive jurisdiction over certain claims, it is instructive to examine the history of the statute.

Prior to the enactment of the PAEA, Congress passed the Postal Reform Act of 1970 ("PRA"). The PRA created the USPS as "an independent establishment of the executive branch of the Government of the United States." 39 U.S.C. § 201. The PRA permitted suit to be

brought against USPS and granted the United States district courts "original but not exclusive jurisdiction" over such actions.  39 U.S.C. §§ 401, 409.

The PRA also established the Postal Rate Commission to hear all claims contesting postal rates and services.  The Postal Rate Commission was created as way to give USPS "unfettered authority and freedom . . . to maintain and operate an efficient service."  Sen. Rep. No. 912, 91st Cong., 2d Sess. 2 (1970).  The Postal Rate Commission's jurisdiction was established in 39 U.S.C. § 3662, titled "Rate and Service Complaints."  Originally, the Section read:

> [I]nterested parties who believe the Postal Service is charging rates which do not conform to the policies set out in this title or who believe that they are not receiving postal service in accordance with the policies of this title may lodge a complaint with the Postal Rate Commission in such form and in such manner as it may prescribe.

39 U.S.C. § 3662 (repealed 2006).

Under this former version of Section 3662, courts routinely held that it delegated jurisdiction exclusively to the Postal Rate Commission for claims involving rates or services, even though it contained the word "may" and was permissive on its face.  See LeMay v. U.S. Postal Serv., 450 F.3d 797, 800 (8th Cir. 2006) ("After undertaking a review of the PRA's legislative history, we hold the remedy provided by Section 3662 is exclusive."); Bovard v. U.S. Post Office, 47 F.3d 1178, 1995 WL 74678, at *1 (10th Cir. Feb. 24, 1995) ("[t]he language of Section 3662 makes clear that a postal customer's remedy for unsatisfactory service lies with the Postal Rate Commission."); Azzolina v. U.S. Postal Serv., 602 F.Supp. 859, 864 (D.N.J. 1985) ("[P]laintiff does not have a private right of action to bring service-related complaints in federal district court"); Tedesco v. U.S. Postal Serv., 553 F. Supp. 1387, 1389 (W.D. Pa. 1983) ("A close reading of the [PRA] strongly suggests that Congress intended that complaints regarding postal

service be resolved outside of court.").

In 2006, Congress passed the PAEA, which expanded the power of the Postal Rate Commission and renamed it the "Postal Regulatory Commission." See 151 Cong. Rec. 3013 (2005) (statement of Sen. Susan Collins). The reach of 39 U.S.C. § 3662 was expanded "to ensure that the Postal Service management ha[d] both greater latitude and stronger oversight." 151 Cong. Rec. 3013 (2005) (statement of Sen. Susan Collins). Currently, Section 3662 grants the PRC jurisdiction over claims arising out of five specific sections of the PAEA. The enumerated sections all relate broadly to the duties and limitations of the postal service.[5] See 39 U.S.C. § 101(d) (duty to apportion postal rates on a fair and equitable basis); 39 U.S.C. § 401(2) (duty to create rules and regulations to effectuate the PAEA); 39 U.S.C. § 403(c) (prohibition against unreasonable discrimination amongst mail users); 39 U.S.C. § 404a (prohibition against acts of unfair competition); 39 U.S.C. § 601 (requirements for mail service).

The history of the PAEA reveals that Congress thought it important for the postal service to have strong internal oversight. The Act was meant to strengthen the PRC's power, and to increase the kinds of claims that may be brought before the PRC. Although the word 'may' appears in Section 3662, it is clear from the statute's history that Congress intended a plaintiff to

---

[5] Plaintiff emphasizes that Section 3662 is titled "Rate and Service Complaints." Since his claim does not concern a rate or service violation, he contends that Section 3662 does not apply here. (Doc. No. 20 at 4.) Plaintiff has brought his claim, however, under Section 404a, a section that is specifically listed in Section 3662. Moreover, Plaintiff overlooks the fact that when a statute is complex, "headings and titles can do no more than indicate the provisions in a most gen[e]ral manner." Bhd. of R. R. Trainmen v. Baltimore & O. R. Co., 331 U.S. 519, 528 (1947). "[H]eadings and titles are not meant to take the place of the detailed provisions of the text." Id. By listing certain provisions of Title 39 in Section 3662, Congress clearly established the kinds of claims that are to be heard by the PRC. Narrowing the scope of Section 3662 to only include rate and service complaints would, in effect, nullify the PAEA.

exhaust the PRC process before challenging an adverse ruling in the United States Court of Appeals for the District of Columbia.[6]  Because Plaintiff has not filed a claim with the PRC, his claim under Section 404a must be dismissed for lack of subject matter jurisdiction.  Even if he had preserved such a claim, he is required to appeal an adverse ruling to the United States Court of Appeals for the District of Columbia, which would have subject matter jurisdiction over his suit.

      B.     Tort Claims

USPS is an agency of the federal government.  See 39 U.S.C. § 201.  To assert a tort claim against the federal government, a plaintiff must comply with the provisions of the Federal Tort Claims Act ("FTCA").  In his Complaint, Plaintiff alleges that USPS committed the following torts:  misrepresentation and fraud (Count II), conversion (Count III), unjust enrichment (Count IV), and misappropriation of trade secrets (Count V).   (Doc. No. 1-1 ¶¶ 50-64.)

Plaintiff's claim of misrepresentation and fraud will be dismissed because the FTCA specifically prohibits a party from filing a claim of misrepresentation against the federal government.  See 28 U.S.C. § 2680(h) ("The provisions of this chapter . . . shall not apply to . . . misrepresentation . . . .").[7]

---

[6] Although there is little case law on the subject of the jurisdiction of a district court since the passage of the PAEA, in 2009 the Western District of Washington held that the language of Section 3662 is mandatory and that district courts lack jurisdiction to hear a claim arising under one of the enumerated sections.  See McDermott v. Potter, No. 09-0776, 2009 WL 2971585 (W.D. Wash. Sept. 11, 2009) aff'd sub nom. McDermott v Donahue, 408 F. App'x 51 (9th Cir. 2011).

[7] Under Pennsylvania common law, misrepresentation and fraud are synonymous.  Aubrey v. Sanders, 346 F. App'x 847, 849 (3d Cir. 2009) (defining the elements of

Plaintiff's claim of conversion will also be dismissed.  The Third Circuit has held that conversion includes "the deliberate taking of another's personal property with the consent of that person to use it for one purpose, but with the intent of using it for another in conflict with that person's interest."  Cenna v. United States, 402 F.2d 168, 170 (3d Cir. 1968).  This form of conversion, however, amounts to misrepresentation and also falls under the FTCA's statutory exclusion.  See id. at 171 (holding that a claim of tortious conversion can be made if a party intentionally deceives another, but such a claim would be excluded under the FTCA).  Here, Plaintiff argues that Defendants intentionally deceived him by leading him to believe they were interested in implementing the VPOBIP system, while secretly using his concept to create Volly.com.  This form of conversion amounts to misrepresentation and, as noted above, is specifically excluded by the FTCA.  See 28 U.S.C. § 2680(h).

Plaintiff's claims of unjust enrichment and misappropriation of trade secrets are not specifically excluded by the FTCA.  However, before proceeding to federal court, the FTCA requires a plaintiff to file a complaint with USPS.  See 28 U.S.C. § 2675(a) ("[T]he claimant shall have first presented the claim to the appropriate Federal agency.").  In this case, Plaintiff is required to present his claim to USPS's Torts Claims Examiner for review before undertaking a court action against the federal government.  (See Doc. No. 14 at 12-13.)  Because Plaintiff has failed to exhaust his administrative remedies as required by the FTCA, Plaintiff's claims for unjust enrichment and misappropriation of trade secrets must be dismissed.

---

misrepresentation and fraud to include "(1) a representation; (2) which is material to the transaction at hand; (3) made falsely, with knowledge of its falsity or recklessness as to whether it is true or false; (4) with the intent of misleading another into relying on it; (5) justifiable reliance on the misrepresentation; and (6) the resulting injury was proximately caused by the reliance.").

## V.  CONCLUSION

For the foregoing reasons, the Court will grant Defendant United States Postal Service's Motion to Dismiss Plaintiff's Complaint pursuant to Federal Rule of Civil Procedure 12(b)(1). An appropriate Order follows.