IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

FREDERICK FOSTER,

          Plaintiff,

    v.

PITNEY BOWES CORPORATION, et al.,

          Defendants.

CIVIL ACTION
NO. 11-7303

## OPINION

**Slomsky, J.**                                                                 **February 7, 2013**

## I.     INTRODUCTION

Pro se Plaintiff Frederick Foster alleges in this case that Defendant Pitney Bowes, Inc. ("Pitney Bowes")[1] collaborated with Defendant the United States Postal Service ("USPS") to steal his intellectual property.  He asserts five claims: (1) a violation of the Postal Accountability and Enhancement Act ("PAEA"); (2) misrepresentation and fraud; (3) conversion; (4) unjust enrichment; and (5) misappropriation of trade secrets.[2]  (Doc. No. 1–1 at 1–5.)  Previously in this case, USPS filed a Motion to Dismiss all claims against them pursuant to Federal Rule of Civil Procedure 12(b)(1).  On July 23, 2012, the Court dismissed all counts against USPS for lack of subject matter jurisdiction.  (Doc. Nos. 31, 32.)

---

[1] Pitney Bowes is incorrectly named in the Complaint as Pitney Bowes Corporation.

[2] Plaintiff also asserts in the Complaint a cause of action for "punitive damages."  (Doc. No. 1–1 at 5–6.)  The Court will not consider this form of relief as a separate cause of action because Pennsylvania law does not permit an independent cause of action for punitive damages. Feingold v. Se. Pa. Transp. Auth., 517 A.2d 1270, 1276 (Pa. 1986) (quoting Hilbert v. Roth, 149 A.2d 648, 652 (Pa. 1959) ("In this Commonwealth '[T]he right to punitive damages is a mere incident to a cause of action — an element which the jury may consider in making its determination — and not the subject of an action in itself.'")).

On August 3, 2012, Pitney Bowes filed a Motion for Judgment on the Pleadings Pursuant to Federal Rule of Civil Procedure 12(c).  (Doc. No. 35.)  On January 10, 2013, Plaintiff filed a Response in Opposition (Doc. No. 45), which he amended on January 15, 2013 (Doc. No. 47).  On January 22, 2013, Pitney Bowes filed a Reply in Further Support of its Motion.  (Doc. No. 49.)  The Motion for Judgment on the Pleadings is now ripe for disposition and will be granted on all counts.

## II.      FACTUAL BACKGROUND[3]

### A.      Plaintiff's Patent Application

The Court recites the facts in the light most favorable to Plaintiff.  On May 30, 2007, Plaintiff submitted a provisional patent application to the United States Patent and Trademark Office ("USPTO").[4]  (Doc. No. 35–7.)  He described his concept as the "Virtual Post Office Box/Internet Passport powered by Global Registration and Verification" ("VPOBIP").[5]  (Doc. No. 1 ¶ 21.)  VPOBIP was designed to verify identity on the Internet.  (Id.)  VPOBIP is a system where, for a fee, individuals and businesses would present identification documents to their local post office.  (Id.)  Once their identity was verified by USPS, they would receive a virtual Post

_____

[3] This factual background is adopted in part from the Court's Opinion dated July 23, 2012.

[4] In deciding this Motion, the Court will take judicial notice of publicly-available records filed with the USPTO.  See Fed. R. Evid. 201 ("The court may judicially notice a fact that is not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned. . . . The court may take judicial notice at any stage of the proceeding."); see also In re Chippendales USA, Inc., 622 F.3d 1346, 1356 (Fed. Cir. 2010) ("[T]his court may take judicial notice of the existence of . . . trademarks under Fed. R. Evid. 201(c), as we determine that the registration documents by the [USPTO] are 'capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.'") (footnote omitted).

[5] VPOBIP is sometimes referred to in patent documents as "METHOD AND SYSTEM FOR REAL WORLD VERIFICATION OF A PERSON AND/OR BUSINESS IDENTITY AT A CENTRAL LOCATION FOR REAL AND VIRTUAL WORLD."  (Doc. No. 35–8 at 1.)

Office Box and their email messages would contain a VPOBIP badge.  (Doc. No. 1, Ex. B at 2.) The VPOBIP badge apparently would make the user seem more trustworthy to other members of the online community.  (Id.)  The aim of VPOBIP was to diminish the amount of Internet fraud as more people used the software.  (Id.)  Above the signature line on Plaintiff's patent application was the following warning: "Petitioner/applicant is advised that the record of a patent application is available to the public after publication of the application (unless a non-publication request in compliance with 37 C.F.R. § 1.213(a) is made in the application) or issuance of a patent."  (Doc. No. 35–7 at 5.)  On June 22, 2007, the USPTO mailed a filing receipt to Plaintiff which stated the following: "**Non-Publication Request:** No."  (Id. at 1 (emphasis in original).)

On December 4, 2008, in accordance with federal law and USPTO regulations, Plaintiff's patent application, U.S. Patent Application No. 12/129,755, was published by the USPTO and made available for public viewing at www.uspto.gov.[6]  (Doc. No. 35–8.)  On May 27, 2009, the USPTO issued a non-final rejection on Plaintiff's patent application, citing issues undermining VPOBIP's patentability.  (Doc. No. 35–9.)  On June 24, 2010, the USPTO issued a final rejection of Plaintiff's patent application, further detailing the application's deficiencies.  (Doc. No. 35– 10.)  On February 16, 2011, the USPTO informed Plaintiff that his patent application had been abandoned because he did not file a timely appeal of the June 24, 2010 final rejection.  (Doc. No. 35–11.)

---

[6] The American Inventors' Protection Act of 1999 mandated that patent applications be published after an eighteen month period.  Congress enacted this requirement in response to the growing problem of so-called "submarine patents."  See Carl Shapiro, Patent System Reform: Economic Analysis and Critique, 19 Berkeley Tech. L.J. 1017, 1038–39 (2004).  Under the old system in the United States, an inventor could file a patent application, which would remain secret, keep the patent "underwater," then "emerge" with the patent and surprise the marketplace, in some instances causing an economic disruption.  Id.  The publication requirement largely eliminated this problem by forcing patents to "emerge" no later than eighteen months after the application is filed, reducing or eliminating unfair opportunism by patent-holders.  Id.

**B.      Plaintiff's Communications with Pitney Bowes and USPS**

On or about May 25, 2007, Plaintiff mailed a description of VPOBIP to USPS's Senior Vice President of Strategy and Transition, Linda Kingsley ("Kingsley").  (Doc. No. 1 ¶ 23.) Kingsley assigned the proposal for review to Linda Stewart ("Stewart"), Vice President of Strategic Planning.  (Id. ¶¶ 23-24.)  Kingsley also instructed Plaintiff to submit his concept through the USPS Innovations Initiative Database, which he did on or about June 11, 2007.  (Id. ¶ 23.)

Plaintiff had several conversations with representatives from USPS, including Stewart and the Manager of Strategic Business Initiatives, Thomas Cinelli ("Cinelli").  (Id. ¶ 24.)  Cinelli told Plaintiff that his proposal would be presented to USPS's stakeholders,[7] including Defendant Pitney Bowes.  (Id.)  The stakeholders approved a VPOBIP pilot program.  (Id. ¶ 25.)

Cinelli forecasted that the profit from the VPOBIP program would exceed $10 million. (Id.)  Cinelli therefore informed Plaintiff that the Postal Regulatory Commission ("PRC") would also need to give its approval.  (Id.)  Plaintiff then began to communicate with the PRC and other government agencies.  (Id. ¶ 26.)

In September 2009, after the USPTO issued its first rejection on Plaintiff's patent application, the PRC suggested that Plaintiff contact John Campo ("Campo"), President of Postal Relations at Pitney Bowes.  (Id. ¶ 28.)  On October 1, 2009, Plaintiff contacted Campo by phone and email.  In his email, Plaintiff described VPOBIP, including his notice of patent rights, and

---

[7] USPS has maintained in this lawsuit that, as a federal agency, it does not have stakeholders. (Doc. No. 14 at 2.)

explained his intent to partner with USPS.[8]  (Id. ¶ 29.)  The Complaint does not allege any

further conversations between Plaintiff and Pitney Bowes or USPS.

In March or April 2011, Pitney Bowes launched "Volly.com," which Plaintiff alleges to

be a violation of his rights in VPOBIP "due to the fact that many features of Volly.com are a

direct copy of the Plaintiff's original creation under US Patent No. 7,707,119 and US Patent

Application No. 12/129,755 . . . ."[9]  (Id. ¶ 30.)  Thereafter, Plaintiff commenced the instant

litigation against Defendants USPS, Pitney Bowes and John Does.

**III.    STANDARD OF REVIEW**

"When deciding a motion for judgment on the pleadings pursuant to [Federal Rule of

Civil Procedure] 12(c), the Court applies the same standard as that on a motion to dismiss

pursuant to Rule 12(b)(6)."  Chirik v. TD BankNorth, N.A., No. 06-04866, 2008 WL 186213, at

*5 (E.D. Pa. Jan. 15, 2008) (citing Turbe v. Gov't of the Virgin Islands, 938 F.2d 427, 428 (3d

Cir. 1991)).

The motion to dismiss standard under Rule 12(b)(6) is set forth in Ashcroft v. Iqbal, 556

U.S. 662 (2009).  After Iqbal it is clear that "threadbare recitals of the elements of a cause of

action, supported by mere conclusory statements do not suffice" to defeat a Rule 12(b)(6) motion

to dismiss.  Id. at 1949; see also Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007).  Applying the

principles of Iqbal and Twombly, the Third Circuit in Santiago v. Warminster Township set forth

a three-part analysis that a district court in this Circuit must conduct in evaluating whether

---

[8] As stated supra, the USPTO already rejected Plaintiff's patent application by this date.

[9] U.S. Patent No. 7,707,119 is a patent owned by Plaintiff.  That patent is a "System and method
for identity protected secured purchasing," and has nothing to do with VPOBIP, Pitney Bowes,
or the USPS.  (Doc. Nos. 35–2; 35–3; 35–4.)  Additionally, as stated supra, at the time of the
Complaint, U.S. Patent Application No. 12/129,755 had been rejected twice by the USPTO and
abandoned by Plaintiff.

allegations in a complaint survive a 12(b)(6) motion to dismiss.  629 F.3d 121, 130 (3d Cir. 2010).

> First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim."  Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth."  Finally, "where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief."

Santiago, 629 F.3d at 130 (quoting Iqbal, 556 U.S. at 675, 679).  "This means that our inquiry is normally broken into three parts: (1) identifying the elements of the claim, (2) reviewing the complaint to strike conclusory allegations, and then (3) looking at the well-pleaded components of the complaint and evaluating whether all of the elements identified in part one of the inquiry are sufficiently alleged."  Malleus v. George, 641 F.3d 560, 563 (3d Cir. May 26, 2011).

A complaint must do more than allege a plaintiff's entitlement to relief, it must "show" such an entitlement with its facts.  Fowler v. UPMC Shadyside, 578 F.3d 203, 210–11 (citing Phillips v. Cnty of Allegheny, 515 F.3d 224, 234–35 (3d Cir. 2008)).  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged — but it has not 'shown' — 'that the pleader is entitled to relief.'"  Iqbal, 556 U.S. at 679.  The "plausibility" determination is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  Id.

## IV.     ANALYSIS

### A.     Applicable Law

Pitney Bowes raises a choice of law issue in its moving brief.  (Doc. No. 35 at 18 n.6.) Plaintiff did not address the choice of law issue in his opposition brief.  The choice of law problem arises because Plaintiff is a Pennsylvania resident, the Complaint references emails sent

to Pitney Bowes' Washington, D.C. office, and Pitney Bowes is headquartered in Connecticut, where Volly.com was developed.  (Id.)

This Court must follow Pennsylvania's choice of law rules.  See Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496 (1941); see also Erie R. Co. v. Tompkins, 304 U.S. 64 (1938). Under Pennsylvania law, if there is no conflict between the laws of respective jurisdictions, additional analysis is unnecessary, and the Court must apply Pennsylvania law.  Hammersmith v. TIG Ins. Co., 480 F.3d 220, 229–30 (3d Cir. 2007).  In this case, there is no substantial conflict of law between Pennsylvania, Washington, D.C., and Connecticut on the elements of Plaintiff's claims.[10]  Therefore, the Court will apply Pennsylvania law when analyzing Plaintiff's common law claims.

### B.    Postal Accountability and Enhancement Act (PAEA) Claim

Plaintiff alleges that Pitney Bowes has violated the Postal Accountability and Enhancement Act — specifically, 39 U.S.C. § 404a(a)(3), which provides:

> (a) Except as specifically authorized by law, the Postal Service may not —
> . . . .
> (3) obtain information from a person that provides (or seeks to provide) any product, and then offer any postal service that uses or is based in whole or in part on such information, without the consent of the person providing that information, unless substantially the same information is obtained (or obtainable) from an independent source or is otherwise obtained (or obtainable).

Id.  "Postal Service" is defined in the PAEA as "the United States Postal Service established by section 201 of this title . . . ."  Id. § 102(1).  Section 201 states: "There is established, as an independent establishment of the executive branch of the Government of the United States, the United States Postal Service."  Id. § 201.  Therefore, because the statute only refers to the "Postal

---

[10] As stated above, in the Complaint, Plaintiff has made the following claims: Count I — Postal Accountability and Enhancement Act (PAEA); Count II — Misrepresentation/Fraud; Count III — Conversion; Count IV — Unjust Enrichment; Count V — Misappropriation of Trade Secrets. As stated supra note 2, Plaintiff's sixth cause of action for punitive damages will not be considered by the Court because it is not a separate cause of action under Pennsylvania law.

Service," the restriction codified in 39 U.S.C. § 404a(a)(3) only applies to USPS.  It does not apply to Pitney Bowes.

Plaintiff attempts to overcome this problem by arguing that Pitney Bowes "is a State Actor in concert with USPS" and should be held liable under the PAEA.  (Doc. No. 47–1 at 4.)  The Third Circuit has provided three tests to determine whether a private entity is a state actor:

> (1) "whether the private entity has exercised powers that are traditionally the exclusive prerogative of the state"; (2) "whether the private party has acted with the help of or in concert with state officials"; and (3) whether "the [s]tate has so far insinuated itself into a position of interdependence with the acting party that it must be recognized as a joint participant in the challenged activity."

Kach v. Hose, 589 F.3d 626, 646 (3d Cir. 2009) (quoting Mark v. Borough of Hatboro, 51 F.3d 1137, 1142 (3d Cir. 1995)).  Plaintiff contends "there's no question that the Defendant [Pitney Bowes] was acting under color of state law when receiving Plaintiff's Trade Secrets from USPS in 2007."  (Doc. No. 47–1 at 4.)

Plaintiff's contentions are not persuasive for three reasons.  First, although Plaintiff apparently cites 42 U.S.C. § 1983 as the basis for his "state actor" argument, he has not alleged a claim under § 1983 against Pitney Bowes in the Complaint.  (See Doc. No. 47–1 at 4 (quoting West v. Atkins, 487 U.S. 42, 48 (1988) ("To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law.")).)

Second, Plaintiff inferred that Pitney Bowes is not a state actor when he averred that "[t]he failure of the state action doctrine to keep pace with the political reality of government contracting significantly undermines our ability to achieve constitutional accountability."  (Doc. No. 47–1 at 4.)  To the extent that Plaintiff invites the Court to expand the definition of a state actor, the Court declines to do so.

Third, the plain language of the PAEA makes clear that the PAEA only applies to USPS. See supra.  Plaintiff cited no case where a court has held an entity other than USPS liable under 39 U.S.C. § 404a.  Accordingly, for all of the above reasons, Judgment will be entered in favor of Pitney Bowes on the PAEA claim.

### C.     Misappropriation of Trade Secrets

Plaintiff contends that he "provided to the defendants . . . trade secrets regarding the VPOBIP System," and that "[t]he defendants knew these trade secrets were confidential in nature and that they were not to wrongfully misappropriate these trade secrets from plaintiff, only to use them to their own benefit and to his detriment."  (Doc. No. 1–1 at 4–5.)  However, his claim for misappropriation of trade secrets fails as a matter of law because he did not make any effort to keep VPOBIP secret — in fact, Plaintiff himself made VPOBIP a matter of public record.

### 1.     Elements of a Trade Secret

In Pennsylvania, a prima facie case for the tort of misappropriation of a trade secret contains the following elements: "(1) the existence of a trade secret; (2) communication of the trade secret pursuant to a confidential relationship; (3) use of the trade secret, in violation of that confidence; and (4) harm to the plaintiff."  Moore v. Kulicke & Soffa Indus., 318 F.3d 561, 566 (3d Cir. 2003) (citing Van Prods. Co. v. Gen. Welding & Fabricating Co., 213 A.2d 769, 775 (Pa. 1965); Restatement (First) of Torts § 757).

Pennsylvania's definition of a trade secret is modeled after § 1 of the Uniform Trade Secrets Act.  A trade secret is defined as:

> Information, including a formula, drawing, pattern, compilation including a customer list, program, device, method, technique or process that:
> (1) Derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use.

(2) Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

12 Pa. Cons. Stat. § 5302.  "Information is readily ascertainable if it is available in trade journals, reference books, or published materials."  Uniform Law Comment, 12 Pa. Cons. Stat. § 5302. "[R]easonable efforts to maintain secrecy have been held to include advising employees of the existence of a trade secret, limiting access to a trade secret on 'need to know basis,' and controlling plant access.  On the other hand, public disclosure of information through display, trade journal publications, advertising, or other carelessness can preclude protection."  Id.

2.     Publication of Plaintiff's Patent Application

In this case, Plaintiff submitted an application for a patent on VPOBIP.[11]  Subject to certain exceptions, "each application for a patent shall be published . . . promptly after the expiration of a period of 18 months from the earliest filing date for which a benefit is sought under this title."  35 U.S.C. § 122(b)(1)(A).  One of the exceptions is if the inventor makes a nonpublication request when the patent application is filed.  USPTO regulations detail the requirements for an inventor to request nonpublication:

> (a) If the invention disclosed in an application has not been and will not be the subject of an application filed in another country, or under a multilateral international agreement, that requires publication of applications eighteen months after filing, the application will not be published under 35 U.S.C. § 122(b) and [37 C.F.R.] § 1.211 provided:
> (1) A request (nonpublication request) is submitted with the application upon filing;
> (2) The request states in a conspicuous manner that the application is not to be published under 35 U.S.C. § 122(b);
> (3) The request contains a certification that the invention disclosed in the application has not been and will not be the subject of an application filed in another country, or under a multilateral international agreement, that requires publication at eighteen months after filing; and
> (4) The request is signed in compliance with [37 C.F.R.] § 1.33(b).

37 C.F.R. § 1.213(a).  A patent application must also include a "specification," which:

---

[11] As stated supra, the USPTO eventually rejected his application.

> shall contain a written description of the invention, and of the manner and process
> of making and using it, in such full, clear, concise, and exact terms as to enable
> any person skilled in the art to which it pertains, or with which it is most nearly
> connected, to make and use the same, and shall set forth the best mode
> contemplated by the inventor or joint inventor of carrying out the invention.

35 U.S.C. § 112(a).  The Supreme Court of Pennsylvania has held:

> The result of [the specification requirement of 35 U.S.C. § 112] and the very
> nature of the patent publication have been consistently interpreted to work a
> destruction of any trade secret disclosed therein.  The inventor is put to his
> election; he can keep his secret hidden and run the risk of independent discovery
> by others, or he can disclose his secret to the world by Letters Patent and receive
> in return from the government a monopoly for 17 years.

Van Prods. Co., 213 A.2d at 778.  Although Van Products Co. analyzed a published patent, which

Plaintiff does not have because the USPTO rejected his application, the same reasoning applies

to a published patent application.  Applying for a patent from the USPTO may cause the

information in the application to be made public because after publication, the application and

specification are available for review by the public.  Therefore, because by definition a patent

and a published patent application are matters of public record, the legal protection of trade

secrets and patents are mutually exclusive.  Sims v. Mack Truck Corp., 488 F. Supp 592, 599

(E.D. Pa. 1980) (citing Van Prods. Co., 213 A.2d at 265), overruled on other grounds by SI

Handling Sys., Inc. v. Heisley, 753 F.2d 1244 (3d Cir. 1985).

On May 30, 2007, Plaintiff filed a provisional application to patent VPOBIP.  (Doc. No.

35–7 at 4–5.)  Directly above his signature was the following warning: "Petitioner/applicant is

advised that the record of a patent application is available to the public after publication of the

application (unless a non-publication request in compliance with 37 C.F.R. § 1.213(a) is made in

the application) or issuance of a patent."  (Doc. No. 35–7 at 5.)  Plaintiff made no non-

publication request.  Attached to his provisional application was a specification describing

VPOBIP.  (Id. at 6.)  The USPTO mailed Plaintiff a "filing receipt" dated June 22, 2007.  (Id. at

11

1–3.) On that receipt was the following statement:  "**Non-Publication Request:** No."  (Id. at 1

(emphasis in original).)  On December 4, 2008, approximately eighteen months after his

application was filed, the USPTO published Plaintiff's application.  (Doc. No. 35–9.)  When the

patent application was published, it became a matter of public record.  At that point, the VPOBIP

specification was available to anyone who reviewed the application.

Here, Plaintiff chose to forgo secrecy in an effort to obtain a patent on his invention.

When he filed an application with the USPTO and made no effort to prevent publication of his

application, he failed to take reasonable steps to maintain the secrecy of VPOBIP.  When the

USPTO published his application as required by law, it became "readily ascertainable by proper

means."  12 Pa. Cons. Stat. § 5302.  VPOBIP, therefore, cannot be a trade secret.

In his opposition brief, Plaintiff contends that "Plaintiff's trade secrets are not

ascertainable from public record or the published patent application," and that he only shared the

trade secrets with USPS and Pitney Bowes in confidence.  (Doc. No. 47–1 at 8.)  He argues that

the title of the published patent application, METHOD AND SYSTEM FOR REAL WORLD

VERIFICATION OF A PERSON AND/OR BUSINESS IDENTITY AT A CENTRAL

LOCATION FOR REAL AND VIRTUAL WORLD, is different from the "trade name" of Virtual

P.O. Box/Internet Passport, and that this "is further evidence that the information [in the patent

application] is not the same [as the information sent to USPS and Pitney Bowes]."  (Id.)

Additionally, he states that "it is not possible to review a published patent application

using the [USPTO Patent Application Information Retrieval system] without knowing one of five

confidential numbers assigned to the patent application."  (Id. at 9.)  He contends that the only

way USPS or Pitney Bowes could obtain this confidential information is through confidential

communications sent by Plaintiff.

These arguments are unpersuasive.  First, a trade secret must be subject to reasonable efforts to keep the information secret.  By sharing VPOBIP with Pitney Bowes and USPS in a business proposal, without any confidentiality agreement or similar precaution, Plaintiff extinguished any claim that VPOBIP is a trade secret.  The fact that the title of the VPOBIP patent application is different from the trade name "Virtual P.O. Box/Internet Passport" is irrelevant.

Second, Plaintiff's assertion that a published patent application can only be reviewed after entering a confidential number is inaccurate.  Using the USPTO "Patent Application Full-Text and Image Database," it is possible to search for a patent application using a number of criteria, including: inventor name, inventor city, inventor state, abstract, application date, application type, and claim(s), among many others.  See U.S. Published Application Full-Text Database Manual Search, http://appft1.uspto.gov/netahtml/PTO/search-adv.html.  His statement that it is "virtually impossible for a third party to review the patent application" is not accurate, and anyone can locate and review his patent application without having any purportedly confidential identifying numbers.

VPOBIP is not a trade secret because Plaintiff allowed the application to be made public when he applied for a patent.  For all these reasons, Judgment will also be entered in favor of Pitney Bowes on Plaintiff's misappropriation of trade secrets claim.

### D.    Misrepresentation and Fraud

Plaintiff alleges that "Defendants intentionally misrepresented to Plaintiff that they would keep as proprietary and confidential the ideas generated by Plaintiff," and that "Plaintiff relied on the representations of the defendants that they would keep the aforesaid VPOBIP concepts proprietary and confidential."  (Doc. No. 1–1 at 2.)  However, because Plaintiff's patent

application and the specification describing VPOBIP were publicly accessible after December 4,

2008, his claim lacks merit.

A prima facie case of fraudulent misrepresentation in Pennsylvania has six elements:

(1) a representation; (2) which is material to the transaction at hand; (3) made
falsely, with knowledge of its falsity or recklessness as to whether it is true or
false; (4) with the intent of misleading another into relying on it; (5) justifiable
reliance on the misrepresentation; and (6) the resulting injury was proximately
caused by the reliance.

Overall v. Univ. of Pa., 412 F.3d 492, 498 (3d Cir. 2005) (quoting Gibbs v. Ernst, 647 A.2d 882,

889 (Pa. 1994)); see Restatement (Second) of Torts § 525 (1977).  "In order for reliance upon a

statement of intention to be justifiable, the recipient of the statement must be justified in his

expectation that the intention will be carried out.  If he knows facts that will make it impossible

for the maker to do so, he cannot be justified in his reliance."  Restatement (Second) of Torts

§ 544 cmt. c (1977).

In this case, Plaintiff knew or should have known that his application to patent VPOBIP

was published on December 4, 2008 and therefore publicly accessible.  This knowledge defeats

Plaintiff's claim that he justifiably relied on a representation by Pitney Bowes that VPOBIP

would be kept confidential.  Any injury Plaintiff may have incurred as a result of VPOBIP

becoming public knowledge was a consequence of Plaintiff submitting a patent application for

the invention and not taking steps to prevent publication.  Judgment will be entered in favor of

Pitney Bowes on Plaintiff's claim of misrepresentation and fraud because the facts establish that

his basis for reliance is not defensible due to his own conduct.

### E.    Conversion

Plaintiff contends that Pitney Bowes "wrongfully appropriate[ed] plaintiff's idea and

us[ed] it for their own benefit and use and profit," and that Pitney Bowes intentionally interfered

and infringed upon his right of possession of his property.  (Doc. No. 1–1 at 3.)  He alleges that

Pitney Bowes has committed the tort of conversion by interfering with Plaintiff's rights in VPOBIP.

"Pennsylvania courts define conversion as the deprivation of another's right of property in, or use or possession of, a chattel without the owner's consent and without legal justification." Welded Tube Co. of Am. v. Phoenix Steel Corp., 512 F.2d 342, 345 (3d Cir. 1975) (citing Stevenson v. Econ. Bank of Ambridge, 197 A.2d 721, 726 (Pa. 1964)).  A chattel is "[m]ovable or transferable property; personal property; esp., a physical object capable of manual delivery and not the subject of real property."  Black's Law Dictionary 251 (8th ed. 2007).  Pitney Bowes argues that because Plaintiff allowed VPOBIP to enter the public domain after he applied for a patent, Pitney Bowes cannot be held liable for conversion of something that is already accessible and usable by the public at large.

When analyzing whether interference with a property interest is substantial enough to create liability for conversion, courts consider the following:

> (a) the extent and duration of the actor's exercise of dominion or control;
> (b) the actor's intent to assert a right in fact inconsistent with the other's right of control;
> (c) the actor's good faith;
> (d) the extent and duration of the resulting interference with the other's right of control;
> (e) the harm done to the chattel;
> (f) the inconvenience and expense caused to the other.

Restatement (Second) of Torts § 222A(2) (1965).  Here, Pitney Bowes' interference with VPOBIP was not sufficient to create liability for conversion.  Plaintiff's right of control over VPOBIP was extinguished after his patent application was published.  His right of control over VPOBIP is no greater than any member of the public who could view the published patent application, and his loss of control was due to his own action — that is, filing a patent application for VPOBIP which he knew or should have known would be published.  Pitney

Bowes cannot be held liable for converting something that is already available for public use, and Judgment will be entered in Pitney Bowes' favor on the conversion claim.[12]

### F.       Unjust Enrichment

Plaintiff also brings a claim for unjust enrichment, alleging that:

> The defendants' wrongful appropriation of plaintiff's VPOBIP System has caused defendants to become enriched, at plaintiff' [sic] expense, in that the VPOBIP System was materially and substantially taken away from plaintiff by the defendants, and the circumstances were/are such that equity and good conscience require the defendants to make restitution.  The benefits of this VPOBIP System — now renamed and rebranded as "Volly.com" by the defendants — have been conferred upon the defendants.[13]

---

[12] Additionally, Pennsylvania law does not allow a claim for conversion of an idea.  Restatement (Second) of Torts § 242 covers "Conversion Of Documents And Intangible Rights," but the commentary and case law suggests that this section is mainly concerned with negotiable instruments, promissory notes, stock certificates, and other documents of legal significance. These documents differ from an idea because they are physical property.  See MacKay v. Benjamin Franklin Realty & Holding Co., 135 A. 613, 614 (Pa. 1927) ("We are aware that an action of trover and conversion can be maintained for almost any kind of personalty, including money, notes, bonds, certificates of stock, title deeds, etc., but no authority was cited and we know of none where such action has been sustained for something so entirely intangible as an idea, not connected with physical property."); Romy v. Burke, No. 1236 May Term 2002, 2005 WL 280861, at *4 n.3 (Ct. Com. Pl. Phila. Jan. 20, 2005) (intangible rights in trade secrets and/or business plan "cannot serve as the basis for a claim for conversion" (citing Restatement (Second) of Torts § 242 (1965))); Ippolito v. Lennon, 542 N.Y.S.2d 3, 6 (App. Div. 1st Dep't 1989) ("Even under an expanded definition of the tort, conversion is limited to those intangible property rights customarily merged in, or identified with, some document . . . ." (citing Restatement (Second) of Torts §§ 222A; 242 (1965))); see also Miles, Inc. v. Scripps Clinic & Research Found., 810 F. Supp. 1091, 1094 (S.D. Cal. 1993) ("Generally, California law only recognizes conversion of intangibles represented by documents, such as bonds, notes, bills of exchange, stock certificates, and warehouse receipts.  Ordinarily, there can be no conversion of the goodwill of a business, trade secrets, a newspaper route, or a laundry list of customers."  (citation and quotation marks omitted)); Schaefer v. Spence, 813 S.W.2d 92, 96–97 (Mo. Ct. App. 1991) (holding that a barbeque sauce recipe is not "a species of property susceptible to conversion").

[13] Pitney Bowes denies that Volly.com is a copy of VPOBIP.  Pitney Bowes contends that Volly™ is a "cloud-based digital mail communications platform that, when launched, will empower consumers to receive, view, organize, and manage bills, statements, and other content from multiple providers using a single application."  (Doc. No. 35 at 10 n.2.)  Unlike VPOBIP, "Volly™ does not involve the USPS and does not use a verification system where subscribers are required to verify their identities by presenting their credentials in person — at a Post Office or elsewhere."  (Id.)

(Doc. No. 1–1 at 4.)  This claim also fails as a matter of law.

"A claim for unjust enrichment arises from a quasi-contract.  'A quasi-contract imposes a duty, not as a result of any agreement, whether express or implied, but in spite of the absence of an agreement, when one party receives unjust enrichment at the expense of another.'"  Stoeckinger v. Presidential Fin. Corp. of Del. Valley, 948 A.2d 828, 833 (Pa. Super. Ct. 2008) (quoting AmeriPro Search, Inc. v. Fleming Steel Co., 787 A.2d 988, 991 (Pa. Super. Ct. 2001)).

> The elements of unjust enrichment are benefits conferred on defendant by plaintiff, appreciation of such benefits by defendant, and acceptance and retention of such benefits under such circumstances that it would be inequitable for defendant to retain the benefit without payment of value.  Whether the doctrine applies depends on the unique factual circumstances of each case.  In determining if the doctrine applies, we focus not on the intention of the parties, but rather on whether the defendant has been unjustly enriched.
>
> Moreover, the most significant element of the doctrine is whether the enrichment of the defendant is unjust.  The doctrine does not apply simply because the defendant may have benefited as a result of the actions of the plaintiff.

Stoeckinger, 948 A.2d at 833 (quoting Styer v. Hugo, 619 A.2d 347, 350 (Pa. Super. Ct. 1993)).

In this case, Pitney Bowes was not enriched at all, let alone unjustly.  Plaintiff bestowed no benefit upon Pitney Bowes.  If Pitney Bowes wished to use or profit from VPOBIP — which was rejected by the USPTO and abandoned by Plaintiff — Pitney Bowes would only need to view the publicly available patent application and specification.  This scenario would not cause an unjust enrichment.  Consequently, Judgment will be entered in favor of Pitney Bowes on the claim of unjust enrichment.

### G.    John Doe Defendants

In addition to Pitney Bowes and USPS, Plaintiff has sued "John Does 1–10."  He alleges in his claim for misrepresentation/fraud that Pitney Bowes and USPS "intended to exploit Plaintiff's proprietary information by utilizing the VPOBIP concepts among themselves or transmitting the concepts for use by [John Does 1–10]."  (Doc. No. 1–1 at 2.)  The John Doe

Defendants are not mentioned in any other part of the Complaint.  Plaintiff also does not allege the citizenship of the John Doe Defendants.

The Court will dismiss the John Doe Defendants.  There are two grounds for dismissal. First, as stated <u>supra</u>, only USPS may be liable under the PAEA.  Because this claim is being dismissed, there is no other basis alleged to support federal question jurisdiction as to all Defendants.  Additionally, Plaintiff has failed to plead facts supporting diversity of citizenship jurisdiction because he did not allege the citizenship of the John Doe Defendants.  In order for a court to have diversity of citizenship jurisdiction under 28 U.S.C. § 1332, a plaintiff "must specifically allege each party's citizenship, and these allegations must show that the plaintiff and [each] defendant are citizens of different states."  <u>Osuch v. Optima Mach. Corp.</u>, No. 10-6101, 2011 WL 2708464, at *1 (E.D. Pa. July 12, 2011) (quoting <u>McCracken v. Murphy</u>, 328 F. Supp. 2d 530, 532 (E.D. Pa. 2004)).  "[W]here a plaintiff does not allege the citizenship of a 'John Doe' defendant, she has not met her requirement to show that she and John Doe are citizens of two different states."  <u>Osuch</u>, 2011 WL 2708464, at *1.  Because Plaintiff has failed to establish diversity of citizenship jurisdiction, the Court is obligated to dismiss this action for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(h)(3).

Second, Federal Rule of Civil Procedure 21 permits the Court to dismiss a party sua sponte.  The Rule provides:  "On motion or on its own, the court may at any time, on just terms, add or drop a party . . . ."  Fed. R. Civ. P. 21.  It would be futile to allow Plaintiff to proceed against the John Doe Defendants because the claims alleged in the Complaint would also fail against these unknown defendants for the reasons stated above in this Opinion.

**V.**      **CONCLUSION**

When the Court views the evidence in the light most favorable to Plaintiff as required by Federal Rule of Civil Procedure 12(c), it is clear that Plaintiff has failed to allege facts that will plausibly show under any circumstances that he is entitled to relief.  Pitney Bowes' Motion for Judgment on the Pleadings will be granted.  Judgment will be entered for Pitney Bowes and against Plaintiff on all counts.  The remaining John Doe Defendants will be dismissed sua sponte pursuant to Federal Rules of Civil Procedure 12(h)(3) and 21.

An appropriate Order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

FREDERICK FOSTER,

               Plaintiff,

    v.

PITNEY BOWES CORPORATION, et al.,

               Defendants.

CIVIL ACTION
NO. 11-7303

**ORDER**

**AND NOW**, this 7th day of February 2013, upon consideration of Defendant Pitney Bowes' Motion for Judgment on the Pleadings (Doc. No. 35), Plaintiff Frederick Foster's Response in Opposition (Doc. No. 47), and Defendant Pitney Bowes' Reply in Further Support (Doc. No. 49), it is **ORDERED** as follows:

1. Defendant Pitney Bowes' Motion for Judgment on the Pleadings (Doc. No. 35) is **GRANTED**.

2. The Clerk of Court shall enter Judgment in favor of Defendant Pitney Bowes and against Plaintiff Frederick Foster on all Counts.

3. All remaining John Does are **DISMISSED** as Defendants.

4. Any outstanding motions are **DENIED AS MOOT**.

5. The Clerk of Court shall close this case for statistical purposes.

BY THE COURT:

/s/ Joel H. Slomsky
JOEL H. SLOMSKY, J.